610 A.2d 11

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jerry BURGOS, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 22, 1991.

Decided May 18, 1992.

Reargument Denied June 19, 1992.

Marshall E. Anders, Stroudsburg, for appellant.

E. David Christine, Jr., Dist. Atty., Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

On April 15, 1989, a jury convened in the Court of Common Pleas of Monroe County, convicted Appellant, Jerry Burgos, of first degree murder, 18 Pa.C.S. § 2501; two counts of arson endangering property, 18 Pa.C.S. § 3301(c)(2) and (3); and abuse of corpse, 18 Pa.C.S. § 5510, in the strangulation death of his wife, Nilsa Burgos. Following the jury's pronouncement of its verdict of guilt, a sentencing hearing was conducted in accordance with 42 Pa.C.S. § 9711 resulting in a determination by the jury that Appellant should be sentenced to death. Post-trial motions

were filed, argued and denied. Appellant was formally sentenced to death on August 23, 1990. Direct appeal from the judgment of sentence was taken to this Court pursuant to 42 Pa.C.S. § 9711(h).

In cases where the capital sanction is imposed we are obliged to independently examine the sufficiency of the evidence. *Commonwealth v. DeHart*, 512 Pa. 235, 516 A.2d 656 (1986), *cert. denied*, 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987); *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327, *reh'g. denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). The test for determining the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, and drawing all proper inferences favorable to the Commonwealth, the jury could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Syre*, 507 Pa. 299, 489 A.2d 1340 (1985), *cert. denied*, 480 U.S. 935, 107 S.Ct. 1577, 94 L.Ed.2d 768 (1987); *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976). This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. *Commonwealth v. Sullivan*, 472 Pa. 129, 150, 371 A.2d 468, 478 (1977); *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976).

A review of the record reveals that Appellant arrived home at 2:30 AM on May 31, 1988 after working a second job as a disc jockey at a Mount Pocono's bar. He removed his two children, Jerry Michael Burgos, then age 6, and Jason Burgos, then age 3, from the house and put them into his truck. Appellant then returned to his house and called the operator to report a fire at his home.

Next, Appellant drove to the house of his neighbors, the Maisanos, and frantically yelled to them that his house was on fire and requested that they call the fire department.

Appellant then returned home. While Mrs. Maisano reported the fire, Mr. Maisano got in his car and drove to the Burgos residence. Upon his arrival at the fire scene, Mr. Maisano observed that the Burgos home was engulfed in flames.

Shortly after Mr. Maisano arrived at the scene, two volunteer fire fighters drove up ahead of the fire trucks. They observed Appellant throwing rocks through the windows of the house, which had the effect of feeding the fire. Appellant told these two fire fighters that his wife, Nilsa Burgos, was in the back bedroom of the burning house.

After the fire trucks and fire fighters converged on the house, Mr. Maisano returned to his home with the Burgos' children. Mrs. Maisano later testified that notwithstanding the defense claim that the Burgos children were taken from the burning house, the boys had clean, unsoiled clothing on and did not smell of smoke. This was also true, Mrs. Maisano observed, of Appellant when he later returned to the Maisano home to check up on his sons.

At the fire scene, while the fire fighters fought to contain the fire, Appellant spoke with the fire company chaplain. Appellant told the chaplain that he had heard his wife calling his name during the initial stages of the fire. The chaplain later testified that he observed scratch marks on Appellant's chest. When the fire was put out, the fire fighters found the charred remains of Nilsa Burgos in the back bedroom of the house as Appellant had indicated to the two fire fighters.

An autopsy performed on Nilsa Burgos revealed that she had been manually strangled to death prior to the time of the fire. The report also indicated that the victim was seven months pregnant at the time of her death.

A state police forensic scientist conducted tests of various materials taken from different areas of the Burgos residence, the results of which indicated the presence of a gasoline type accelerant on the materials including the victim's flesh.

Finally, the Commonwealth introduced at trial the fact that the Burgoses were experiencing significant financial problems. It was suggested that the key to unlock these financial difficulties was the life insurance policy that Appellant had taken out on his wife in the amount of $75,000, which was purchased at the same time he had purchased a policy for himself in the amount of $100,000.

Review of the facts of this case leaves no doubt that the evidence was sufficient for the jury to have determined that all elements of the crimes had been established beyond a reasonable doubt.

Appellant argues numerous contentions of error; however, our resolution of just one of these claims convinces us that a new trial is necessary.

It is Appellant's contention that the trial court erred as a matter of law in allowing State Police Trooper Clark Ritter to testify as to the prior inconsistent statements of Appellant's six-year old son Jerry Michael Burgos and in instructing the jury that they could consider such testimony as substantive evidence.

In *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986), we held that otherwise admissible prior inconsistent statements of a declarant who is a witness in a judicial proceeding and is available for cross-examination may be used as substantive evidence to prove the truth of the matters asserted therein. *Id.*, 510 Pa. at 131, 507 A.2d at 70. We set forth in *Commonwealth v. Lively*, 530 Pa. 464, 610 A.2d 7, also decided today, that otherwise admissible prior inconsistent statements were limited to a statement that had been given under oath at a formal legal proceeding; or a statement that had been reduced to a writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness' statement.

Seven-year old Jerry Michael Burgos testified at trial on behalf of the Commonwealth as to the circumstances surrounding the origin and cause of the fire. The prosecutor did not question him, however, about the discrepancy be-

tween his two prior statements to police and his trial testimony. N.T. 723–731. Instead, the two prior inconsistent statements were introduced into evidence through the testimony of Trooper Ritter. N.T. 783–793. This was error.

The record indicates that Jerry Michael Burgos, then aged six, was initially interviewed on the day the fire occurred. Furthermore, his initial statement, which was confirmed in a subsequent interview, was obtained in the presence of two police officers and two representatives of the Commonwealth with no interested adult present on behalf of the child. The statements Trooper Ritter obtained were not recorded verbatim and in fact were changed, by Trooper Ritter's own admission, to a more intelligible form. N.T. 801.

The prior inconsistent statements of Jerry Michael Burgos were not otherwise admissible because the statements were not given under highly reliable circumstances. These statements were not given under oath at a formal legal proceeding; or statements reduced to a writing signed and adopted by the witness; or statements that are a contemporaneous verbatim recording of the witness' statements. See *Commonwealth v. Lively,* supra.

The *Brady* rule was also violated by the prosecutor's failure to confront Jerry Michael Burgos with his two prior inconsistent statements. Instead, the Commonwealth elected to introduce the two prior statements into evidence through the testimony of Trooper Ritter. The jury, therefore, was impermissibly deprived of the opportunity to observe the child's demeanor and hear his testimony and explanations regarding the discrepancy. Moreover, the effect of permitting Trooper Ritter to testify as to the prior statements was to bolster the physical evidence introduced by the Commonwealth as to the origin and cause of the fire. This runs contrary to the purpose of *Brady*. For these reasons, the introduction of Jerry Michael Burgos's prior statements as substantive evidence was reversible error.

■ Because a new trial is mandated, it is instructive to examine the sole aggravating circumstance that the jury found in the sentencing proceeding, which was that this was a killing for hire. Our death penalty statute provides for the aggravating circumstance of killing for hire when it is demonstrated that:

> The defendant paid or was paid by another person or had contracted to pay or be paid by another person or had conspired to pay or be paid by another person for the killing of the victim.

42 Pa.C.S. § 9711(d)(2).

The Commonwealth's theory throughout the case was that Appellant killed his wife in order to obtain the proceeds of an insurance policy he purchased on his wife's life shortly before her death. In concluding that Section 9711(d)(2) was properly presented to the jury as an aggravating circumstance, the trial court reasoned that while the insurance company was obviously an unwitting participant in Appellant's plot, Appellant contracted with the company and was motivated to kill his wife in order to obtain the insurance proceeds. Trial Court Opinion p. 22.

The plain language of the statute is limited to instances when a person pays or is paid to kill or contracts to kill another person based upon being paid or making payments. This statutory language stands in stark contrast to the trial court's interpretation of it as applying to a killing for pecuniary gain and does not comport with our previously expressed view of the statute. See *Commonwealth v. Holloway*, 524 Pa. 342, 572 A.2d 687 (1990); *Commonwealth v. Williams*, 514 Pa. 62, 522 A.2d 1058 (1987); and *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700 (1984), *cert. denied*, 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984). For this reason, the aggravating circumstance of killing for hire should not have been submitted to the jury because the Commonwealth failed to prove essential elements of 42 Pa.C.S. § 9711(d)(2) beyond a reasonable doubt.

The judgment of sentence of the Court of Common Pleas of Monroe County is reversed and the case is remanded to a new trial.

McDERMOTT, J., concurs in the result.