719 A.2d 1039

COMMONWEALTH of Pennsylvania, Appellant,

v.

Ronald SHOLCOSKY, Appellee.

Supreme Court of Pennsylvania.

Submitted Sept. 2, 1997.

Decided Nov. 9, 1998.

Michael J. Barrasse, D.A., William P. O'Malley, Asst. D.A., for the Com.

Gerald Deady, West Pittston, for Ronald Sholcosky.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

ZAPPALA, Justice.

This is an appeal by the Commonwealth from the Superior Court's memorandum opinion and order vacating the judgment of sentence imposed upon Ronald Sholcosky and remanding the case for a new trial. We granted allocatur to address the issue of whether a prior inconsistent statement of a non-party witness may be used as substantive evidence if the proponent of the statement does not question the witness in court concerning the statement. Because the Superior Court's decision is consistent with our opinion in *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986), and its progeny, we affirm.

Sholcosky was convicted of first degree murder, aggravated assault, simple assault, endangering the welfare of a child and recklessly endangering another person in connection with the beating death of six month old Bryan Edwards. The child was left in the care of Sholcosky and his girlfriend, Cheryl Rollison, on March 12, 1993 while the child's mother was working. Rollison left the house at 12:30 p.m., leaving the child alone with Sholcosky. When the child's mother returned that afternoon, she found that the child was not breathing. Paramedics were called and the child was treated and transported to a local hospital. The child was revived and later transferred to Hershey Medical Center, where he died the next day at 1:00 p.m. after being removed from life support. An autopsy revealed a 2–1/2 inch skull fracture, massive hemorrhaging and swelling of the brain. The cause of death was determined to be blunt force trauma to the head. Sholcosky was arrested and charged with murder and other offenses.

The evidence introduced at trial established that the child had been in the exclusive care of Sholcosky on March 12 from approximately 12:30 p.m. until 3:00 p.m. The crucial inquiry during the trial was when the injuries resulting in the child's death were inflicted. The Commonwealth presented the testimony of the forensic pathologist who performed the child's autopsy. The pathologist testified that the child was in Sholcosky's exclusive care.

Dr. Richard Bindie, a forensic pathologist and the director of the Department of Pathology at Pottsville Hospital, testified as a defense witness. Dr. Bindie testified that his review of the autopsy report and laboratory slides indicated that the child had possibly been subjected to abuse over a period of time before the fatal incident. With respect to the question of when the fatal injuries were inflicted, Dr. Bindie testified as follows:

Q. Doctor, taking into account everything you testified to on Friday, the fibroblasts, the laboratory reports that we went through, and everything you observed in the records, could you tell us what your opinion is as to when these injuries were inflicted?

A. My opinion based on the autopsy report that I read and the slides that I looked at and also the medical records, my opinion was around 24 hours.

Q. From when?

A. From when the child was pronounced dead, at least 24 hours.

Q. At least 24 hours?

A. Yes.

Q. Now, Doctor, if I were to tell you that the medical records indicate that the child was pronounced dead at approximately 1:03 or 1:05 in the afternoon on March the 13th, you would go backward 24 hours from that time?

A. Yes.

Q. Would you take us back to 1, 1:03 p.M.[sic] On March the 12th, correct?

A.   Yes.

Q.   It is your opinion that these injuries were inflicted prior to that time?

A.   At that time or around that time, generally.

Q.   When you say around that time generally what is the means that you are using?

A.   Well, you can't give a definite time in this day and age with our knowledge, with our laboratory methods like Quincy does on TV. You have to give a range always.   I would say it's at least 24 hours and it could go either way, two hours this way, two hours the other way.

Q.   Is there any way to pin it down more precisely than that?

A.   I can't.

Q.   In your opinion within a reasonable degree of medical certainty does the medical evidence in this case allow the time to be pinned down more specifically than that?

A.   Not in my opinion, no.

R. 75–77.

Dr. Bindie's testimony that the child's injuries had been inflicted between 11:00 a.m. and 3:00 p.m. was inconsistent with the statements contained in his written report, which Dr. Bindie submitted to defense counsel.   The written report was dated December 28, 1993.   In his report, which was marked as Defendant's Exhibit No. 45, Dr. Bindie stated:

This evidence of fibroblast ... now lead [sic] to conclude, within a reasonable degree of medical certainty that these injuries could not have occurred during the period of time when the infant was at the residence of Ronald Shulcosky [sic] on March 12, 1993 from approximately 8:50 a.m. until shortly after 3:00 p.m. I believe that the medical evidence leads to the conclusion that the injuries were inflicted prior to 8:50 a.m. and that the child proceeded to deteriorate throughout the day until he reached the condition found by the paramedics upon their arrival at approximately 3:20 p.m. on March 12.

R. 114–115. Dr. Bindie's report further indicated that his finding of chronic child abuse was based on evidence of a fractured right clavicle, high protein levels in the urine, high blood glucose levels, and an elevated white blood cell count in the child.

The written report was introduced into evidence at the close of the trial. No objection was made by the Commonwealth to the admission of the report, or to any other exhibit offered by defense counsel. Defense counsel rested and the record was closed after the Commonwealth indicated that no rebuttal witnesses would be called. The trial judge convened the court until the following morning.

When court reconvened the next day, the Commonwealth submitted a "Motion in Limine in Regard to Defense Closing." The Commonwealth requested that an order be entered precluding defense counsel from referring to the context of Dr. Bindie's report in the closing. The three-paragraph motion asserted:

1. During the direct testimony of Dr. Richard Bindie, defense witness, defense counsel introduced the expert report of Dr. Richard Bindie.

2. The Commonwealth anticipates that defense may, in his closing remarks, attempt to argue to the jury the contents of that report rather than the testimony of Dr. Bindie.

3. The Commonwealth contends that such argument would be improper as closing argument must be based upon testimony, not extrinsic evidence.

R. 116.

The trial judge granted the Commonwealth's motion in limine over defense counsel's objection that the Commonwealth had failed to object to the admission of the written report into evidence.

On appeal, defense counsel argued that because the key issue at trial was the time when the child's injuries were inflicted, Sholcosky's case was irreparably harmed by the trial judge's order granting the Commonwealth's motion in limine.

The Superior Court found that the trial judge had committed reversible error in precluding any reference during defense counsel's closing argument to Dr. Bindie's written report. Citing *Commonwealth v. Lively*, 530 Pa. 464, 610 A.2d 7 (1992), the court stated, "[w]e find this report, signed and adopted by Bindie, was in direct contradiction to his testimony and reference thereto by defense counsel during closing remarks was entirely proper and should not have been precluded." The court vacated the judgment of sentence and remanded the matter for a new trial.

The per curiam order granting the petition for allowance of appeal stated that this Court would consider three specific issues:

1.  Whether the [sic] Dr. Bindie's [the defense's expert in forensic pathology] statement in his written report concerning the time the fatal injury occurred constitutes a prior inconsistent statement pursuant to *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986), and its progeny.

2.  Whether a prior inconsistent statement of a non-party witness may be used as substantive evidence if the proponent of the prior statement does not question the witness in court concerning the statement.

3.  Whether a prior inconsistent statement in an expert witness's written report may be argued as substantive evidence if the proponent of the expert's statement does not question the witness in court concerning the statement.

The Commonwealth states at page 10 of its brief that "[t]he testimony of Dr. Bindie at trial, concerning the time the fatal injury occurred, was plainly inconsistent with Dr. Bindie's prior statement in his written report concerning the time of the fatal injury." Since the Commonwealth does not dispute that the defense expert's testimony at trial was inconsistent with statements contained in his written report, and the

record supports this, there is no need to address the first issue.[1]

As to the third issue, the Commonwealth states at page 22 of its brief that "[t]he Court's third question is virtually the same question as the Court's second question but for the injection of the fact ... that the non-party witness happens to be an expert and the prior inconsistent happens [sic] to have been in writing and included in the expert's written report." The Commonwealth's discussion of the third issue is extremely limited, and merely suggests that the reliability of an expert's written report might easily be affected by the degree of enthusiasm which the expert believed that the hiring-lawyer wanted the expert to have for the lawyer's case. Otherwise, the Commonwealth simply asserts that no matter what type of inconsistent statement, the surest means of assuring the reliability of the explanation for the inconsistency is cross-examination before the trier of fact.

In *Plair v. Commonwealth, Board of Probation and Parole,* 104 Pa.Cmwlth. 297, 300, 521 A.2d 989, 991 (1987), the Commonwealth Court stated that "[t]he admissibility of a prior consistent statement does not depend on whether it is recorded, oral, or part of a report. These things may affect the weight of the evidence, but not the admissibility." Similarly, the Commonwealth's argument in this case that an expert's report might be influenced by trial counsel speaks to the weight of the evidence rather than admissibility.[2] No argu-

---

1. In his dissenting statement, Justice Saylor addresses the issue of whether the evidentiary rule enunciated in *Commonwealth v. Brady,* was intended to or should apply to opinion evidence. This issue was not raised at trial, considered by the trial court, or presented on appeal by the Commonwealth. For this reason alone, the issue has been waived. More importantly, however, is the fact that the Commonwealth has conceded that *Brady* is applicable in this case. In its Summary of Argument, the Commonwealth stated that, "Dr. Bindie's statement in his written report concerning the time the fatal injury occurred constitutes a prior inconsistent statement pursuant to *Commonwealth v. Brady* ... and its progeny." (Brief at 9.) No brief was filed on behalf of Ronald Sholcosky and the case was submitted on the Commonwealth's brief alone.

2. The defense expert in this case testified that he had testified on behalf of the Commonwealth 95% of the time during court appearances when he testified as the pathologist who conducted the autopsy.

ment has been made by the Commonwealth that prior inconsistent statements contained in an expert report may not be used as substantive evidence.

For these reasons, discussion will be limited to the remaining issue of whether a prior inconsistent statement of a non-party witness may be used as substantive evidence if the proponent of the expert's statement does not question the witness in court concerning the statement.

The Commonwealth urges this Court to adopt its position that a prior inconsistent statement of a non-party witness should not be used as substantive evidence if the proponent of the statement has not questioned the witness in court concerning the statement. The Commonwealth claims that this Court's decision in *Brady* compels this rule, although it is quick to suggest that the rule should not be a per se rule as "exceptional circumstances (apparently not present in this case) might possibly warrant allowance of exceptions to such rule on a case-by-case basis." [3] In essence, the Commonwealth argues that failure to cross-examine a witness on the basis of a prior inconsistent statement is a waiver of the right to use the statement for any purpose.

Even though Dr. Bindie was called to testify at trial on behalf of the defense, the Commonwealth asserts that he was "unavailable for cross-examination" because defense counsel did not question Dr. Bindie regarding the statements in his written report. Dr. Bindie was in fact subject to cross-examination by the prosecutor, but the Commonwealth claims that the witness was nevertheless "unavailable." [4] The Commonwealth contends that under *Brady*, the prior inconsistent

**3.** The Commonwealth does not identify any circumstances that it perceives to be exceptional so as to justify deviation from the proposed rule of law it seeks this Court to endorse.

**4.** The direct examination was conducted over two days. The Commonwealth's cross-examination was limited to one question:

Q. Doctor, is it your testimony as I understand it that it is your opinion to a degree of medical certainty, a reasonable degree of medical certainty, that the child received his bruises, his injury, 24 hours plus or minus two hours the [sic] time of death?

A. Yes

R. 97–98.

statements in the written report could not be used as substantive evidence, although the report itself was admitted into evidence.

In *Brady*, we departed from the longstanding rule that prior inconsistent statements of a non-party witness could only be used to impeach the credibility of the witness, not as substantive evidence to prove the truth of the matters asserted therein. We joined the growing number of jurisdictions that have held that such statements may be used as substantive evidence where the declarant is a witness at trial and available for cross-examination.

Upon further reflection and consideration of the shortcomings of the orthodox rule, as clearly illustrated by the circumstances of this case, we reject that rule and embrace the modern rule as the law of this Commonwealth. The traditional view is that a prior statement of a witness is hearsay if offered to prove the truth of the matters asserted therein. The orthodox rule deems hearsay generally, and prior inconsistent statements specifically, too unreliable to be admitted as substantive evidence because the declarant was (1) not under oath, (2) not subject to cross-examination at the time the statement was made, and (3) not in the presence of the trier of fact when the statement was made. Each prong of this threefold rationale has been logically and thoroughly debunked by the scholars and by the growing number of jurisdictions adopting the modern rule governing prior inconsistent statements of non-party witnesses by statute, rule or case law.

The simple fact is that "the usual dangers of hearsay are largely nonexistent where the witness testifies at trial." By hypothesis in these situations, the out-of-court declarant is now a witness in-court where he or she is placed under oath, subject to cross-examination and under observation by the finder of fact.

510 Pa. at 128–129, 507 A.2d at 68–69 (citations omitted).

The defendant in *Brady* was convicted of second degree murder, burglary and criminal mischief for the stabbing death

of a security guard. During a police interview conducted on the day of the murder, the defendant's girlfriend admitted that she had witnessed the defendant killing the guard. The police obtained a tape-recorded statement from the girlfriend to that effect, which she recanted at trial when called as a witness by the Commonwealth. The Commonwealth was permitted to introduce the tape-recorded statement as substantive evidence to prove the truth of the matters asserted and the jury was instructed that the statement could be considered for that purpose.

We applied the so-called modern rule, finding that the tape-recorded statement was properly admitted as substantive evidence because the statement was rendered under highly reliable circumstances assuring that it was voluntarily given. We noted that the witness was subject to cross-examination as to the validity of each statement and the jury had the opportunity to observe the demeanor of the witness and to assess her credibility.

We did not address in *Brady* the question of under what circumstances a prior inconsistent statement would be considered highly reliable so as to render the statement admissible as substantive evidence. Subsequently, we held in *Commonwealth v. Lively*, 530 Pa. 464, 610 A.2d 7 (1992), that a prior inconsistent statement by a non-party witness shall be used as substantive evidence only when it was given under oath at a formal legal proceeding, or the statement was reduced to a writing signed and adopted by the declarant, or the statement was recorded verbatim contemporaneously with the making of the statement.[5]

In *Commonwealth v. Halsted*, 542 Pa. 318, 666 A.2d 655 (1995), the defendant was convicted of involuntary deviate sexual intercourse and indecent assault. The victim told a Pennsylvania State Trooper that the defendant had performed oral sex on him in the presence of the defendant's eight-year old grandson. The grandson confirmed the information. The

[5]. It is undisputed that the statements contained in Dr. Bindie's written report fall within the category of statements reduced to a writing signed and adopted by the declarant.

trooper made notes during the interview and prepared a typewritten police report from his notes. At trial the defendant's grandson denied seeing the defendant engage in oral sex with the victim. The Commonwealth was unable to refresh the grandson's recollection by confronting him with his statements to the trooper. The trooper was allowed to read into the record the text of the grandson's statement from his typewritten report as substantive evidence of the offense.

We held that the trooper's report was not admissible as substantive evidence of the crime charged against the defendant as a contemporaneous, verbatim recording. We determined that the report was not made contemporaneously with his interview with the child and was inadmissible under *Lively*. We reversed and remanded for a new trial.

Unfortunately, the lead opinion had suggested in dicta that statements of witnesses contained in the trooper's notepad would have been admissible as substantive evidence if the notepad had been produced at trial. The concurring opinion, which was joined by four members of this Court, specifically stated that a "recording" of a witness's prior inconsistent statements that is neither audiotaped nor videotaped may be admissible as substantive evidence of the offenses charged.

In *Commonwealth v. Wilson*, 550 Pa. 518, 707 A.2d 1114 (Pa.1998), we addressed the precise issue left unresolved in *Halsted*. We held that, under the *Lively* standard, when the prior inconsistent statement sought to be used as substantive evidence is a contemporaneous verbatim recording of a witness's statement, the recording of the statement must be an electronic, audiotaped or videotaped recording in order to be considered as substantive evidence.

Throughout the historical development of the rule permitting the use of prior inconsistent statements as substantive evidence under limited circumstances, we have never imposed a requirement that the proponent of the statement first conduct cross-examination of the witness before the statement may be used as substantive evidence.[6] We decline the Com-

6. In *Commonwealth v. Burgos*, 530 Pa. 473, 610 A.2d 11 (1992), an opinion which was issued on the same day as *Lively*, the defendant was

monwealth's invitation to impose such a requirement now. *Brady* recognized the availability of the witness for cross-examination as the reason why prior inconsistent statements of the witness may be considered sufficiently reliable to be admitted as substantive evidence. The oath taken by the declarant and the opportunity for cross-examination were found to be sufficient to defuse hearsay concerns and allow the fact finder to determine the truth. Foregoing cross-examination does not render the prior inconsistent statement inadmissible as substantive evidence. As a trial strategy, it merely risks the possibility that the fact finder will give more weight to the witness's testimony at trial than to the witness's prior statement in the absence of an explanation of the inconsistencies between the statement and trial testimony.

Indeed, it would be incongruous to impose such a requirement where the prior inconsistent statement is admissible as substantive evidence when the proponent of a prior inconsistent statement, who uses the statement solely to impeach the credibility of the witness, is not required to examine the witness about the statement.

It was once held that in order to impeach the credibility of a witness by proof of statements contradictory to his trial testimony, it was first necessary to lay grounds for the admission of the impeaching testimony by calling the witness's attention to the contradictory statements and inquiring if he had made such. However, it has been established for some years in Pennsylvania that such procedure is not mandatory and is now a matter within the sound discretion

convicted of first degree murder, arson and abuse of corpse in connection with the strangulation death of his wife. The defendant's son testified at trial for the Commonwealth as to the circumstances surrounding the origin and cause of the fire. The child's testimony was inconsistent with prior statements given to police officers on the day the fire occurred. The statements were not recorded verbatim and were revised by the officers to make them more intelligible. We held that the child's statements were inadmissible under the *Lively* standard.

We also stated, in dicta, that the *Brady* rule was violated by the prosecutor's failure to confront the child with his two prior inconsistent statements. To the extent that this language may be interpreted to conflict with our holding today, it is expressly rejected.

of the trial judge, subject to reversal if the discretion is abused.

*Commonwealth v. Dennison*, 441 Pa. 334, 272 A.2d 180 (1971) (citations omitted).

In this case, the Commonwealth did not challenge the admissibility of Dr. Bindie's written report when it was offered into evidence.[7] Yet the Commonwealth sought to limit defense counsel's use of that substantive evidence.[8] The trial judge erred in granting the Commonwealth's motion in limine because the report was properly admitted as substantive evidence and defense counsel should have been permitted to refer to Dr. Bindie's report in his closing argument.

The Superior Court's order is affirmed.

CAPPY, J., files a concurring opinion.

NIGRO, J., concurs in the result.

SAYLOR, J., files a dissenting opinion in which NEWMAN, J., joins.

CAPPY, Justice, concurring.

While I believe that the rationale of the dissent is meritorious, I am constrained to join the majority for the reasons noted in footnote one of the majority opinion, to wit, the issue addressed by the dissent regarding the application of the evidentiary rule announced in *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986) to opinion evidence, was not raised before the trial court nor offered on appeal by the Commonwealth, thus, the issue has been waived.

SAYLOR, Justice, dissenting.

The first issue on which appeal was allowed is whether a statement in the defense expert's written report concerning

---

**7.** The motion in limine also did not challenge the admissibility of the expert report. The Commonwealth requested only that defense counsel be precluded from referring to the report in his closing argument.

**8.** The written report was not introduced simply for the purpose of impeaching Dr. Bindie's credibility.

the time of the fatal injury constituted a prior inconsistent statement pursuant to *Commonwealth v. Brady.* Because I do not believe that the evidentiary rule enunciated in *Brady* was intended to or should apply to opinion evidence, I respectfully dissent.

The evidence at issue is a report of the defense expert prepared in anticipation of trial. In his testimony at trial, the expert expressed an opinion as to the time of the child victim's fatal injury that was contrary to the opinion he rendered in his report. Rather than probing this critical discrepancy through examination, defendant's counsel permitted his own expert to leave the witness stand without an explanation.[1] Following the direct examination of the expert, the Commonwealth, understandably, did not seek to contravene the portion of his testimony which was consistent with that of its own expert. The expert report was moved into evidence, together with 58 other exhibits at the close of trial. The next day, the Commonwealth lodged its objection to argument connected with the substance of the report.

Based upon *Brady,* the majority holds that the Commonwealth's objection should have been denied. In *Brady,* this Court held that prior inconsistent statements that can be considered highly reliable may be admitted at trial as substantive evidence. Subsequently, in *Commonwealth v. Lively,* the Court set forth the circumstances under which a statement may be considered highly reliable for purposes of the *Brady* rule.

These cases, however, should not be read for the proposition that any and all evidence offered under the rubric of a prior inconsistent statement should be admissible for its substance. Where, as here, a defense expert has expressed an opinion in court and before the fact finder, the party offering such opinion should not be permitted to present to the jury as

1. Certainly, under these circumstances defense counsel could have, if necessary, declared surprise and sought leave to treat the expert as a hostile witness subject to cross-examination, which the trial court most assuredly would have permitted given the inconsistency. *See Commonwealth v. London,* 461 Pa. 566, 574, 337 A.2d 549, 553 (1975).

probative evidence contradictory portions of a prior report from the same expert.

Both *Brady* and *Lively* involved the admissibility of statements of fact rather than opinion.[2] Courts have long recognized the significant, qualitative differences between testimony as to facts and expressions of opinion. For example, in *Ray v. City of Philadelphia*, 344 Pa. 439, 25 A.2d 145 (1942), this Court stated:

> An opinion is only that: it creates no fact. It is what someone thinks about something, and the thought may be precisely accurate or totally inaccurate, and yet represent the absolutely honest conviction of the person who expresses it. Because of this, opinion evidence is generally considered of low grade, and not entitled to much weight against testimony of positive facts. There is a great difference between factual and opinion testimony. In the one the witness testifies to the fact and certifies that what he says of it is true. In the other, he only testifies to his opinion that such a thing is true, and certifies only to the integrity of his belief. He says he believes his opinion to be correct, but he does not warrant it to be true, and does not pretend that he cannot be mistaken.

*Id.* at 441–42, 25 A.2d at 146; *see also Commonwealth v. Jordan*, 407 Pa. 575, 583, 181 A.2d 310, 315 (1962). Because of the special nature of expert opinion evidence, a party is prohibited from offering absolutely conflicting expert testimony. *See Commonwealth v. Gonzales*, 463 Pa. 597, 601–602, 345 A.2d 691, 693 (1975). Such prohibition is based upon the

---

**2.** Indeed, this Court has applied the *Brady* rule only in circumstances involving prior inconsistent statements of fact. *See, e.g., Commonwealth v. Wilson*, 550 Pa. 518, 707 A.2d 1114 (1998) (disallowing use of officer's notes of prior statements made by minor victims); *Commonwealth v. Halsted*, 542 Pa. 318, 666 A.2d 655 (1995) (statements of minor witness); *Commonwealth v. Simmons*, 541 Pa. 211, 662 A.2d 621 (1995) (earlier report of a rape victim), *cert. denied*, 516 U.S. 1128, 116 S.Ct. 945, 133 L.Ed.2d 870 (1996); *Commonwealth v. Howard*, 538 Pa. 86, 645 A.2d 1300 (1994) (eyewitness statements); *Commonwealth v. Ragan*, 538 Pa. 2, 645 A.2d 811 (1994) (eyewitness statement); *Lively*, 530 Pa. at 464, 610 A.2d at 7 (witness statement); and *Commonwealth v. Burgos*, 530 Pa. 473, 610 A.2d 11 (1992) (statements of a minor witness).

sound principle that a jury should not be required to guess between contradictory expert evidence offered by the same party, much less the same witness. *See id.* The fact that the inconsistent opinion is characterized as a prior inconsistent statement does not diminish this concern.

Additionally, the admissibility of expert opinion evidence is subject to foundational predicates. For example, a factual basis must be laid for the opinion, *see Commonwealth v. Rounds,* 518 Pa. 204, 209, 542 A.2d 997, 999 (1988), and the opinion must be expressed with an adequate degree of certainty. *See Commonwealth v. Edmiston,* 535 Pa. 210, 222–23, 634 A.2d 1078, 1084 (1993). To allow an extrajudicial inconsistent expert report to be admitted under *Brady* would essentially excuse the proponent from satisfying such requisites.

In this case, apparently as a matter of strategy, defense counsel chose not to explore before the jury the inconsistency between his expert's trial testimony and pre-trial report when such inconsistency arose during the testimony. The defense having foregone its opportunity in this regard, the trial court should not be required to put before the jury a prior inconsistent expert report that is not the type of fact-based statement contemplated by *Brady* and that is not grounded in the testimony heard. Indeed, to allow two contradictory opinions, offered by the same expert, to go to the jury without explanation would inject confusion into the jury's deliberations and require the jury to impermissibly speculate as to a critical fact.

Finally, the majority finds that the Commonwealth waived (and indeed expressly conceded) the issue of whether the defense expert's report constituted a prior inconsistent statement for purposes of the evidentiary rule announced in *Brady.* Such issue, however, was squarely implicated by the decision of the Superior Court in this case, which vacated Appellee's judgment of sentence based upon its conclusion that the report should have been admitted pursuant to *Brady* ; in fact, this issue was the first issue expressly framed in the grant of allocatur. Moreover, it is axiomatic that an appellate court may sustain a correct judgment based upon any valid reason

that is supported by the record. For these reasons, I believe that the issue is properly before us, and I do not view the Commonwealth's erroneous concession as binding upon this Court for decisional purposes.

In my view, the trial judge made sound evidentiary rulings, the jury considered all admissible evidence presented by the parties, and an entirely proper verdict obtained. Thus, I would reverse the order of the Superior Court and reinstate the judgment of sentence.

NEWMAN, J., joins this dissenting opinion.