J-S10029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMERE WALKER | |
| Appellant | No. 1544 EDA 2018 |

Appeal from the Judgment of Sentence imposed April 13, 2018
In the Court of Common Pleas of Delaware County
Criminal Division at No: CP-23-CR-0002023-2017

BEFORE:  GANTMAN, P.J.E., STABILE, J., and COLINS, J.[*]

MEMORANDUM BY STABILE, J.:                    **FILED MAY 10, 2019**

Appellant, Jamere Walker, appeals from the judgment of sentence imposed on April 13, 2018 in the Court of Common Pleas of Delaware County following his conviction of third-degree murder, possessing instruments of a crime ("PIC"), and violations of the Uniform Firearms Act ("VUFA").[1]  The trial court imposed an aggregate sentence of 30 to 60 years in prison, comprised of 20-40 years' imprisonment for third-degree murder, 18-36 months'

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Following a December 2017 trial, a jury acquitted Appellant of first-degree murder but convicted him of murder in the third degree, 18 Pa.C.S.A. § 2502(C), as well as PIC, 18 Pa.C.S.A. § 907, and firearms not to be carried without a license, 18 Pa.C.S.A. § 6106.  He was also convicted following a bench trial of possession of firearms prohibited, 18 Pa.C.S.A. § 6105.

imprisonment for PIC, and a total of eight and one-half to 17 years' imprisonment for VUFA. All sentences were ordered to run consecutively.

Appellant filed post-sentence motions, which were denied on May 8, 2018. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

The trial court summarized the underlying facts of this case as follows:

On August 30, 2016, Chester City Police responded to a 911 call for reported shots fired and a motor vehicle accident in Chester City. Upon arrival to the scene, two heavily damaged vehicles were found, a red Volvo and a gold Dodge Intrepid. The lone occupant of the Volvo was the victim, J. Charles Hopkins, who was bleeding profusely from the head and neck area and barely breathing. The victim was transported to Crozer Medical Center, where he succumbed to his injuries. The cause of death was multiple gunshot wounds to the head and neck and the manner of death was ruled a homicide. The Dodge Intrepid had no occupants, but the driver's side airbag had deployed and was covered in blood. A 9mm firearm was found on the driver's side dashboard in addition to six loose shell casings recovered from the interior of the [Intrepid] and on the street. A ballistics report matched all the casings to the 9mm firearm found inside the car. Additionally, blood was found on the driver side door, on the passenger side door handle, and on the exterior of the vehicle. A DNA analysis was completed on the blood samples and all samples matched the DNA of [Appellant].[2] A phone recovered from inside the Intrepid was later identified as belonging to [Appellant].

According to the testimony of a Chester City firefighter and the 911 call, only one suspect was seen fleeing from the scene in the immediate aftermath of the shots being fired and the crash. The 911 caller described a subject leaving the scene as a male badly limping approximately a half block away from the scene. Video

---

[2] DNA recovered from the firearm was deemed "uninterpretable" because, while there was a sufficient amount of DNA to analyze, it "appear[ed] to be multiple individuals present," rendering it "too complex of a mixture to interpret." Notes of Testimony, Trial, 12/6/17, at 77.

footage from an apartment complex in Chester City showed [Appellant] limping badly hours after the homicide, consistent with the injuries of the suspect seen limping away from the crime scene. A witness outside of Sporty's, a nearby bar in Chester, testified that on the night of the incident, when [Appellant] saw the victim in the red Volvo drive by, [Appellant] exclaimed, "That's the Motherfucker!" and immediately chased after him in the Intrepid and gunshots were heard approximately sixty seconds later. The Delaware County Medical Examiner testified that all of the projectile paths of the bullets proceeded from the victim's left to right, which, combined with the other physical evidence, were consistent with the conclusion [Appellant] had pulled up alongside the victim's vehicle and discharged at least 7 rounds before crashing the vehicles.

Trial Court Opinion, 7/19/18, at 1-3 (citation to trial evidence omitted).

Although not mentioned in the trial court's summary, we note that the Intrepid was owned by defense witness, Brian Slowe. Prosecution witness Jamal Fleming, as well as Slowe, testified that Slowe permitted Fleming to use the vehicle for the entire month of August. Fleming drove the car to Sporty's and parked it near the bar on the night in question, leaving the keys in the car. He and Appellant were outside of Sporty's talking when the victim drove by and Appellant yelled, "That's the Motherfucker." With that, Appellant jumped into the Intrepid and drove off in the same direction as the Volvo. No one else was in the car when Appellant pulled away and, according to Fleming, there was no gun or cellphone in the car when he parked it outside of Sporty's. *See* Notes of Testimony, Trial, 12/5/17, 67-71, 79, 86.

Fleming acknowledged he had entered into a plea agreement and was awaiting sentencing on firearms charges relating to his possession of a .357 Magnum. He stated he would appreciate it if the sentencing judge gave him

a lighter sentence in light of his agreement to testify truthfully in Appellant's case. However, his understanding of the agreement was simply that he agreed to tell the truth. Nothing was promised to him. *Id.* at 71-73, 92.

In his Rule 1925(b) statement of errors complained of on appeal, Appellant asserted the evidence was insufficient to support his third-degree murder, PIC, and VUFA convictions. Rule 1925(b) Statement, 6/28/18, at ¶¶ 1-2. In addition, he claimed his convictions were against the weight of the evidence. *Id.* at ¶ 3. He also requested the opportunity to amend or supplement his Rule 1925(b) statement "upon receipt and review of the notes of testimony." *Id.* at ¶ 4.

In his brief filed with this Court, Appellant asks this Court to consider the following issues:

> I. Whether the evidence was insufficient to support [Appellant's] conviction for the offense of murder of the third degree[,] possessing an instrument of crime—18 Pa.C.S. § 907, violation of the Uniform Firearms Act—2 counts—18 Pa.C.S. § 6106 and 18 Pa.C.S. § 6106 [*sic*].
>
> II. Whether the trial court erred in admitting unduly prejudicial and gruesome photographs as evidence.
>
> III. Whether the trial court erred in allowing irrelevant evidence regarding how many individuals may have touched the firearm at issue.

Appellant's Brief at 1.

We first note that issues not preserved in a Rule 1925(b) statement are waived. Pa.R.A.P. 1925(b)(4)(vii); **Commonwealth v. Hill**, 16 A.3d 484,

492 (Pa. 2011) (citing **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998)). The second and third issues presented in Appellant's brief are evidentiary issues that were not preserved in his Rule 1925(b) statement. We acknowledge that Appellant's Rule 1925(b) statement included a request to amend or supplement the statement upon receipt and review of the notes of testimony from his trial. However, the trial court rejected that request in its Rule 1925(a) opinion, stating:

> Upon application of the appellant and for good cause shown, the judge may permit an amended or supplemental statement to be filed. Pa.R.A.P. 1925(b)(2). Good cause includes, but is not limited to, delay in the production of a transcript necessary to develop the statement, so long as the delay is not attributable to a lack of diligence in ordering or paying for such transcript by the party of counsel on appeal. **Id.** Here, [Appellant] requests he be allowed to amend his statement upon receipt and review of the notes of testimony from [Appellant's] jury trial[.] However, [Appellant's] trial concluded on December 8, 2017, yet his statement was not filed until June 28, 2018. [Appellant] had over seven months to request and review the notes of testimony from his jury trial. This delay is directly correlated to [Appellant's] own lack of diligence and/or good cause shown in regards to his appeal. Therefore, this court is not required to permit [Appellant] to amend or supplement his statement.

Trial Court Opinion, 7/19/18, at 8 (some capitalization omitted). Because Appellant's evidentiary issues were not preserved in his Rule 1925(b) statement, we shall limit our discussion to Appellant's first issue, *i.e.*, whether the evidence at trial was sufficient to sustain his convictions.

Our Supreme Court has explained that, "with respect to our sufficiency review, our standard of review is *de novo,* however, our scope of review is limited to considering the evidence of record, and all reasonable inferences

arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." *Commonwealth v. Rushing*, 99 A.3d 416, 420-21 (Pa. 2014) (citing *Commonwealth v. Diamond*, 83 A.2d 119, 126 (Pa. 2013); *Commonwealth v. Robinson*, 864 A.2d 460, 478 (Pa. 2004)). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Robinson*, 864 A.2d at 478 (quoting *Commonwealth v. Burgos*, 610 A.2d 11, 13 (Pa. 1992)).

The gist of Appellant's sufficiency argument is that there was insufficient evidence to support his conviction of possession of a firearm and, therefore, the evidence was insufficient to support a conviction for murder with a firearm or the related firearms offenses. He claims that a firearm was recovered from the dashboard of the Intrepid Appellant drove—a vehicle Appellant did not own—but that no one actually saw him possess the firearm. Further, he contends, there was no evidence that Appellant was aware of the firearm in the vehicle or that Appellant constructively possessed the firearm.

Here, Appellant was not licensed to carry a firearm and was prohibited from possessing one. He was observed driving the Intrepid, the Intrepid was involved in a crash with the victim's Volvo, only one individual was seen limping away from the crash scene, the description of that individual's size, build and clothing resembled Appellant, DNA samples from inside the Intrepid matched Appellant's DNA, and ballistics evidence determined that the shell

casings discovered in the Intrepid and on the street matched the firearm found on the dashboard and revealed that the shots were fired from inside the Intrepid, toward and through the passenger side door of the car.

Again, "we evaluate the record in the light most favorable to the Commonwealth as the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Toomer*, 159 A.3d 956, 960-61 (Pa. Super. 2017) (quoting *Commonwealth v. Yasipour*, 957 A.2d 734, 745 (Pa. Super. 2008) (additional citation omitted)). "However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence." *Id.* at 961 (citations omitted). This Court may not substitute its judgment for that of the jury, and we may not disturb convictions if the record contains support for them. *Id.*

When viewed in the light most favorable to the Commonwealth as verdict winner, the evidence presented at trial was sufficient to establish that Appellant possessed the firearm recovered from the dashboard of the Intrepid and was sufficient to support his conviction of PIC. Because he was not licensed to carry a firearm and was prohibited from possessing one, the evidence was likewise sufficient to support those firearms convictions.

Turning to the conviction for third-degree murder, we note that our Supreme Court discussed third-degree murder in detail in *Commonwealth v. Fisher*, 80 A.3d 1186 (Pa. 2013), albeit as a prelude to examining whether

a person could be convicted of conspiracy to commit murder in the third

degree. As for the crime itself, the Court explained:

> Section 2502 of the Crimes Code defines the three degrees of murder. This section sets forth the *mens rea* for first degree murder, *see* 18 Pa.C.S. § 2502(a) (an intentional killing), and defines second degree murder as that occurring during the perpetration of a felony. ***See id.***, § 2502 (b). Regarding third degree murder, however, the statute simply states, "All other kinds of murder shall be murder of the third degree." ***Id.***, § 2502 (c). Importantly, § 2502(c) does not set forth the requisite *mens rea* for third degree murder; however, § 302(c) of the Crimes Code provides, "When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts *intentionally, knowingly or recklessly* with respect thereto." ***Id.***, § 302(c) (emphasis added).

***Id.*** at 1191. The Court noted that the elements of third-degree murder have

been defined by our case law as follows:

> [T]o convict a defendant of the offense of third[ ]degree murder, the Commonwealth need only prove that the defendant killed another person with malice aforethought. This Court has long held that malice comprehends not only a particular ill-will, but . . . [also a] wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.

> ***Commonwealth v. Santos***, 583 Pa. 96, 876 A.2d 360, 363 (2005) (alteration in original) (internal citation, quotation, and emphasis omitted); ***see also Commonwealth v. Drum***, 58 Pa. 9, 15 (1868) (defining malice as quoted above). This Court has further noted:

> [T]hird degree murder is not a homicide that the Commonwealth must prove was committed with malice and without a specific intent to kill. Instead, it is a homicide that the Commonwealth must prove was committed with malice, but one with respect to which the Commonwealth need not prove, nor even address, the presence or absence of a

specific intent to kill. Indeed, to convict a defendant for third degree murder, the jury need not consider whether the defendant had a specific intent to kill, nor make any finding with respect thereto.

*Commonwealth v. Meadows*, 567 Pa. 344, 787 A.2d 312, 317 (2001) (quoting *Commonwealth v. Young*, 561 Pa. 34, 748 A.2d 166, 174–75 (1999)).

*Id.*

Here, the trial court summarized the testimony, DNA evidence, and video surveillance, all of which revealed that:

[Appellant] saw the victim's red vehicle drive by Sporty's Bar and was heard shouting, "that's the Motherfucker," after which he immediately got into a gold four-door vehicle and drove off in the same direction as the victim. Shortly after, a witness testified to hearing 8-9 gunshots and saw [Appellant] limping away from the scene. DNA evidence confirmed [Appellant's] presence in the gold car and 12 witnesses testified to either seeing [Appellant] driving towards the crime scene, being at the crime scene, or limping away from the crime scene. The fact [is] that [Appellant] verbally identified the victim, specifically as "the Motherfucker," immediately hopped into [the gold] car, and drove in the same direction as the victim, after which several gunshots were then heard. This is more than enough evidence, both direct and circumstantial, for the jury to find the presence of malice.

Trial Court Opinion, 7/19/18, at 4-5. Our review of the testimony and evidence, viewed—along with reasonable inferences—in the light most favorable to the Commonwealth, leads us to the same conclusion, *i.e.*, the evidence was sufficient to support Appellant's conviction of murder in the third degree.

The evidence was sufficient to support all of Appellant's convictions. Therefore, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/10/19