J-S14020-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JERRY BURGOS | : | |
| | : | |
| Appellant | : | No. 3174 EDA 2024 |

Appeal from the PCRA Order Entered November 5, 2024
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-CR-0000306-1988

BEFORE:   DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.:                    **FILED JULY 28, 2025**

Jerry Burgos ("Burgos") appeals pro se from the order denying his motion for post-conviction DNA testing.[1]  After careful review, we affirm.

On April 15, 1989, a jury convicted Burgos of first-degree murder, arson, and abuse of a corpse for the strangulation and subsequent burning of his wife, Nilsa Burgos, and the couple's residence.  On August 30, 1990, the trial court sentenced Burgos to death.  Our Supreme Court reversed the judgment of sentence and ordered a new trial to correct the trial court's erroneous inclusion of inconsistent witness testimony from Burgos' son and

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. § 9543.1.

inapplicable aggravating circumstances of killing for hire. ***Commonwealth v. Burgos***, 610 A.2d 11 (Pa. 1992).

On remand, a jury convicted Burgos of the same charges, and the trial court sentenced him to life in prison for first-degree murder and five to ten years in prison for arson. This Court affirmed the judgment of sentence, and our Supreme Court denied allowance of appeal on December 29, 1995. ***Commonwealth v. Burgos***, 667 A.2d 417 (Pa. Super. 1995) (non-precedential decision), ***appeal denied***, 670 A.2d 139 (Pa. 1995).

## Post-Conviction Procedural History

On December 31, 1996, Burgos filed a petition under the Post-Conviction Relief Act ("PCRA"),[2] amended on October 12, 2000, wherein he alleged counsel was ineffective for failing to seek DNA testing. At an initial hearing, the PCRA court reviewed the degree and caliber of DNA testing presented at Burgos' second trial and granted Burgos time to examine and test preserved remains, including charred pieces of a t-shirt discovered in the vicinity of the victim's body, hair from the victim, and tissue from the victim's buttocks and pubic area. Ultimately, the 2004 National Medical Services Report uncovered a DNA profile on a remnant of the shirt that was not sourced from Burgos or the decedent and was female. No other samples submitted produced a cognizable DNA result. On January 5, 2005, the PCRA court

_____

[2] 42 Pa.C.S. §§ 9541-9546.

reviewed the laboratory report in its entirety and denied Burgos' first PCRA petition on the grounds that the DNA testing failed to produce any exculpatory evidence that negated the evidence presented at trial. This Court affirmed, and our Supreme Court denied his request for allowance of appeal. *Commonwealth v. Burgos*, 895 A.2d 645 (Pa. Super. 2006) (non-precedential decision), *appeal denied*, 926 A.2d 440 (Pa. 2006).

On January 24, 2012, Burgos filed a post-conviction petition for DNA testing pursuant to section 9543.1. In this petition, Burgos requested additional DNA testing of blood on the carpet beneath the victim's body that previously produced no results,[3] fetal remains,[4] and any other preserved DNA. He additionally claimed that the discovered female DNA in the previously reviewed 2004 report "may produce further evidence of that person's or additional person's DNA at the scene of the crime." *Commonwealth v. Burgos*, 2014 WL 10979652, *3 (Pa. Super. 2014) (non-precedential decision). The lower court held a hearing on this petition on March 12, 2012. On June 1, 2012, Burgos filed a supplemental PCRA petition raising alleged *Brady*[5] violations unrelated to the DNA testing petition. Ultimately, the court

---

[3] The record reflects that the surface under the victim was never believed to contain blood and tested positive for accelerant residue. N.T., 9/24/1993, at 1111, 1113, 1120. *See also* PCRA Court Opinion, 2/12/2013, at 11.

[4] The victim was pregnant at the time of her murder.

[5] *Brady v. Maryland*, 373 U.S. 83 (1963).

denied both petitions. The court first found that Burgos requested testing of "blood remains" that were not preserved or presented into evidence and concluded that it "cannot grant a request for DNA testing on evidence that does not appear to exist." PCRA Court Opinion, 2/12/2013, at 11. The court then analyzed Burgos' motion on the merits and found that there was no reasonable possibility that any additional testing beyond what was already uncovered in the 2004 National Medical Services Report would establish Burgos' innocence, and that his motion was untimely. *Burgos*, 2014 WL 10979652, at **8-9. This Court affirmed, and our Supreme Court denied allowance of appeal. *Id.*, *appeal denied*, *Commonwealth v. Burgos*, 99 A.3d 923 (Pa. 2014).

On July 24, 2024, Burgos filed the underlying petition for post-conviction DNA testing seeking to identify the person associated with the DNA found on the charred pieces of shirt as described in the 2004 National Medical Services Report, as well as a separate PCRA petition.[6] The Commonwealth filed an answer, and Burgos filed a response. The PCRA court[7] entered an order

---

[6] In the separate PCRA petition, Burgos purported to invoke the newly-discovered fact timeliness exception to the PCRA's time bar based upon what the motion for further DNA testing could potentially uncover and sought the results of the requested DNA testing.

[7] We recognized that our Supreme Court has directed that the court ruling upon post-conviction DNA testing should be referred to as the "trial court" and not the "PCRA court" because "requests for DNA testing are distinct from petitions filed under the PCRA, and because [s]ection 9543.1 directs that the
*(Footnote Continued Next Page)*

- 4 -

denying both the petition for DNA testing and PCRA petition. Burgos filed a notice of appeal and a court-ordered concise statement of matters complained on appeal pursuant to 1925(b).

On appeal, Burgos raises the following questions for our review:

1. Is [Burgos] entitled to post convict[ion] DNA testing under section 9543.1 for the forensic testing on the blood evidence of the unknown contributor in order to reveal the identity which is scientifically valid in a[n] actual innocence claim as is not subject to the PCRA time[]bar[?]

2. Did the [PCRA] court impermissibly time[]bar the motion for post[-]conviction DNA testing under section 9543.1 by relying on 42 Pa.C.S. § 9545 newly[-]discovered evidence [sic] standard of the [PCRA][?]

3. Did the [PCRA] court violate [Burgos'] due process rights for failing to provide a Rule 907 notice of intent to dismiss[?]

Burgos' Brief at 4 (unnecessary capitalization omitted).

**DNA Testing**

<u>Arguments</u>

Burgos first argues that he is entitled to DNA testing under section 9543.1 to determine who contributed the DNA found on the charred pieces of shirt referenced in the 2004 report. Burgos' Brief at 1. He contends that the DNA remnant found belongs to the perpetrator of the crimes, and the

_____

applicant file the motion for DNA testing in the court that imposed the applicant's sentence." ***Commonwealth v. Hardy***, __, A.3d __, 2025 WL 1688799, at *10 n.54 (Pa. June 17, 2025). Here, however, the court below was tasked with ruling upon both Burgos' petition for post-conviction DNA testing and a separate PCRA petition. As such, we refer to the court singularly as the PCRA court.

revelation of this alleged perpetrator's identity will per se establish his innocence because there was no similar DNA attributable to him found on the decedent. *Id.* at 5. Burgos asserts that a female attacker broke the decedent's fingers and the recovered DNA sample would provide the identity of this female. *Id.* at 1; *see also id.* at 5 ("The [DNA] evidence [belongs to] the female who is directly responsible for the murder of his wife and for the arson of his home."). Burgos highlights that there were no eyewitnesses to the crimes, no physical evidence linking him to the crimes, and no DNA evidence linking him to the crime scene. *Id.* at 2. According to Burgos, the PCRA court's failure to grant his motion for further DNA testing constitutes legal error. *Id.* at 6.

Applicable Law

"Post conviction DNA testing falls under the aegis of the PCRA, and thus, our standard of review permits us to consider only whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error." *In re Payne*, 129 A.3d 546, 553-54 (Pa. Super. 2015) (en banc) (citation, brackets, and quotation marks omitted).[8]

Section 9543.1 provides in relevant part:

**(a) Motion.—**

---

[8] It is well settled, however, that a request for DNA testing under section 9543.1 is not subject to the PCRA time bar. *Commonwealth v. Williams*, 35 A.3d 44, 50 (Pa. Super. 2011).

(1)     An individual convicted of a criminal offense in a court of this Commonwealth may apply by making a written motion to the sentencing court at any time for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2)     The evidence may have been discovered either prior to or after the applicant's conviction.  The evidence shall be available for testing as of the date of the motion.  If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the evidence was subject to the testing, but newer technology could provide substantially more accurate and substantially probative results, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

*     *     *

(4)     DNA testing may be sought at any time if the motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.

*     *     *

(6)     The motion shall explain how, after review of the record of the applicant's trial, there is a reasonable possibility if the applicant is under State supervision … that the testing would produce exculpatory evidence that would establish:

(i) the applicant's actual innocence of the offense for which the applicant was convicted;

*     *     *

**(c) Requirements.—**In any motion under subsection (a), under penalty of perjury, the applicant shall:

(1)(i) specify the evidence to be tested;

\* \* \*

(2)(i) in a sworn statement subject to the penalties under 18 Pa.C.S. §§ 4902 (relating to perjury) and 4903 (relating to false swearing), assert the applicant's actual innocence of the offense for which the applicant was convicted and that the applicant seeks DNA testing for the purpose of demonstrating the applicant's actual innocence; and

\* \* \*

(3) present a *prima facie* case demonstrating that the:

(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

(A) the applicant's actual innocence of the offense for which the applicant was convicted;

\* \* \*

**(d) Order.—**

(1) Except as provided in paragraph (2), the court shall order the testing requested in a motion under subsection (a) under reasonable conditions designed to preserve the integrity of the evidence and the testing process upon a determination, after review of the record of the applicant's trial, that the:

\* \* \*

(iii) motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.

(2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility for an applicant under State supervision … that the testing would produce exculpatory evidence that:

(i) would establish the applicant's actual innocence of the offense for which the applicant was convicted[.]

42 Pa.C.S. § 9543.1(a), (c), (d).

Pennsylvania courts previously would routinely find a petition filed pursuant to section 9543.1 to be facially untimely based upon the number of years that had passed since the petitioner first had the opportunity to file a petition for DNA testing if the petitioner cited no new developments in forensic technology to justify the delay. *See, e.g., Commonwealth v. Edmiston*, 65 A.3d 339, 357 (Pa. 2013) (finding that petition for post-conviction DNA testing untimely when filed twenty years after counsel became aware of the evidence requested and there were no cited technological advancements in forensics previously unavailable at trial); *Commonwealth v. Walsh*, 125 A.3d 1248, 1258 (Pa. Super. 2015) (affirming the PCRA court's finding that a petition for DNA testing filed almost ten years after defendant had the opportunity to request DNA testing at trial is untimely).

In 2018, however, our General Assembly amended the language of section 9543.1. *See* Act of Oct. 24, 2018, P.L. 896, No. 147. In *Commonwealth v. Hardy*, our Supreme Court recently took the opportunity

to review, inter alia, the significance of the amended language of the statute. *See Hardy*, 2025 WL 1688799.

In that case, Hardy filed his petition for further DNA testing twenty-seven years after his conviction for the first-degree murder of his ex-girlfriend, twenty-two years after his sentence became final, and eighteen years after the General Assembly first enacted section 9543.1. *Id.* at *5. Hardy requested DNA testing of various untested items that had been located around the victim's body, including rope found in her vehicle that was likely used to strangle her and a bolt found under her body, assumed to be the same one missing from a gate used to lock the entrance to the factory where the murder took place, per the Commonwealth's theory of the case. *Id.* at **5, 7. He also requested that previously discovered DNA remnants, already unattributable to Hardy, be run through a DNA bank to reveal their identity, including DNA discovered on the victim's fingernails and seminal fluid from a condom found near the victim. *Id.* at **7, 9. Hardy argued that the victim's boyfriend at the time of her murder—whose seminal fluid was found inside the victim's vagina and who discovered her body the next morning—was in the surrounding area that evening and police too readily discounted him as a suspect; and further, that there was an unsolved rape in the vicinity days before the victim was discovered, and Hardy suspected the perpetrator could be associated with the condom found near the victim. *Id.* at **7, 9 n.50. Hardy asserted that, pursuant to section 9543.1, he met his prima facie

burden that the identity of the perpetrator was at issue in his trial, and that the DNA testing, assuming exculpatory results, would establish his actual innocence. *Id.* at *9.

The trial court denied Hardy's petition, finding it to be untimely filed. *Id.* at *10. It further found that additional testing on items that had already been DNA tested would not produce new results, and items that had not been tested were available to be tested at the time of trial. *Id.* This Court affirmed, agreeing that the petition was untimely and that Hardy failed to establish a prima facie case that DNA testing would demonstrate his actual innocence because the record contained circumstantial evidence of his guilt. *Id.* at **11-13.

Our Supreme Court granted allowance of appeal to "address the timeliness of a request for DNA testing, the implications of new testing technology for the examination of old evidence, and the sufficiency of an applicant's claim of innocence as a prerequisite to testing." It first considered the timeliness of a request for post-conviction DNA testing. *Id.* at *16. The Court recognized the facial dichotomy between the statutory language in sections (a)(1) and (4) that allowed the filing of a motion "at any time" and that of subsections (a)(4) and (d)(1)(iii) requiring that the motion be "made in a timely manner." *Id.* (citations and emphasis omitted). While noting the language was seemingly "paradoxical," *id.* at *16, particularly as it appeared in the same sentence in subsection (a)(4), the Court held that "'at any time'

- 11 -

directly and specifically concerns the time period for filing the motion," and is entitled to primacy over the [] generalized reference to a 'timely manner.'" *Id.* at *20. It found that this interpretation was consistent with the statute's remedial purpose of benefiting the class of citizens who have been wrongly convicted of a crime. *Id.*

Though the General Assembly "has the authority and ability" to determine "a fixed period of time for filing a motion," the *Hardy* Court recognized that it did not do so. *Id.* at *17. Thus, to reconcile the conflicting language of section 9543.1, as amended, the Court addressed the question of timeliness thusly:

> No interpretation of a provision as facially perplexing as [s]ection 9543.1(a)(4) will fully eliminate the challenges that the language presents on its face. Yet, the best understanding of the statute's timeliness provisions allows their words to coexist and to adhere to prior judicial construction. After Act 147, an applicant may file a motion for post-conviction DNA testing "at any time." This means that there is no fixed temporal period within which the applicant must seek DNA testing, and no invisible clock that is running against the applicant from any particular time. Nonetheless, the motion must be "made in a timely manner," which, consistent with *Edmiston*, means that it is aimed "not to delay the execution of sentence or administration of justice," but rather is designed "for the purpose of demonstrating the applicant's actual innocence."

*Id.* at *23 (footnotes omitted). The Court concluded that Hardy's petition, which he filed to prove his actual innocence and not for purposes of delay, was timely. *Id.* at *23.

Turning to Hardy's request for retesting of previously tested DNA evidence, the Court recounted that it was based entirely on the "newer

technology" provision of section 9543.1. *Id.* at *25. The Court further observed that there was no debate that the newer technology, set forth in detail in Hardy's petition and supported by an expert's opinion, existed since the DNA in that case had been tested in the 1990s. *Id.* at *26. And although DNA testing to date had not implicated Hardy (which the Court recognized was not conclusive proof of his innocence), it was Hardy's contention that testing the requested items, which he directly tied to the commission of the murder, would reveal the identity of the true killer. *Id.* at **26-27. The **Hardy** Court concluded that the courts below "erred in rejecting Hardy's request under [s]ection 9543.1(a)(2)" as the statute "erects no hurdle to Hardy's request for DNA testing of either previously tested or previously untested evidence." *Id.* at *27.

Finally, the Court assessed the sufficiency of Hardy's "prima facie" claim of "actual innocence." *Id.* at *27. The Court began, noting that although the statute does not define "actual innocence," courts have used the standard "more likely than not that no reasonable juror would have found the applicant guilty beyond a reasonable doubt," to establish actual innocence—a standard the Court adopted. *Id.* at *28. The Court further determined that the "prima facie case" requirement under subsection (c)(3) is statutorily defined as "'a reasonable possibility' that the 'testing would produce exculpatory evidence that would establish the applicant's actual innocence'" under subsections (a)(6) (d)(2). *Id.* at *29 (ellipses omitted); **see also id.** ("It would be

incongruous to interpret the "*prima facie* case" requirement of subsection (c)(3) as imposing some unspoken, more exacting burden than the General Assembly expressly articulated as the applicable standard in subsections (a)(6) and (d)(2).").

Our Supreme Court continued, observing that because the results of DNA testing that may establish a petitioner's "actual innocence" did not exist yet, the petitioner "must offer some 'speculation and conjecture' as to what the requested DNA testing might reveal." *Id.* at *30. As an applicant under supervision, Hardy was required to establish a "'reasonable possibility' that the DNA testing requested would produce evidence meeting the actual innocence standard, *i.e.*, making it more likely than not that no reasonable juror would have found the applicant guilty beyond a reasonable doubt." *Id.* at *29. "This is a highly fact-sensitive inquiry that will depend upon the nature of the Commonwealth's evidence identifying the applicant as the perpetrator of the offense, as well as the possibility that the defense's theory of innocence could have been accepted as true by the fact-finder, if new and favorable DNA evidence were obtained." *Id.* at *30. In other words, "the [s]ection 9543.1 inquiry requires an assessment of the reasonable possibility that the applicant's theory of innocence might, in fact, be correct," emphasizing, however, that this is not a review of the sufficiency of the evidence to support his guilt "viewed in the light most favorable to the Commonwealth." *Id.* at *29. Instead, the Court determined that section 9543.1 requires "the

applicant to make a case-specific showing that there is a 'reasonable possibility' … that 'DNA testing of the specific evidence, assuming exculpatory results, would establish' the applicant's 'actual innocence' of the offense in question[.]" *Id.* at \*30.

Ultimately, the Court found Hardy met his prima facie burden as to his actual innocence, noting that while Hardy was the prime suspect, there was conflicting evidence of the time and location of the victim's death, and that the timing and location of the murder was central to the Commonwealth's case against Hardy. *Id.* \*30.

> [G]iven Hardy's demonstration that he always has maintained his innocence, that the evidence against him was purely circumstantial, that he was not implicated by any of the prior forensic or DNA testing of the evidence, and that there were at least potential alternative suspects, Hardy sufficiently has demonstrated a reasonable possibility that testing of at least some of the identified evidence would produce an exculpatory outcome, through which he could establish his actual innocence.

*Id.* at \*31.

## Analysis

In the case at bar, the PCRA court found that Burgos was aware of the DNA found on the remains of the shirt for about twenty years and did not explain his delay in filing the motion, rendering it untimely. PCRA Court Opinion, 12/13/2024, at 8. Additionally, the PCRA court found that Burgos was unable to establish how the DNA testing would prove his actual innocence. *Id*. The court noted that it had previously rejected Burgos' claim twice that

the DNA found on the shirt would prove his innocence and found no reason to contradict its prior rulings. *Id.* at 8-9.

Upon review, we conclude that the PCRA court erred in finding the instant PCRA petition for DNA testing to be untimely filed. Burgos requested that the available DNA discovered on the shirt be run through a databank system to discover the identity of the DNA remnant. Burgos' Brief at 4. He claims that this testing will prove his actual innocence of the crimes for which he was convicted. *Id.* at 8. On its face, his petition for post-conviction DNA testing was not made to delay the administration of justice or the execution of his sentence (he is serving a life sentence) and he seeks to prove his actual innocence. *See Hardy*, 2025 WL 1688799, at **20, 23.

We agree with the PCRA court, however, that Burgos has not presented a prima facie case to establish a reasonable possibility of his actual innocence. Unlike the applicant in *Hardy*, Burgos does not establish any potential connection between the unknown DNA and the evidence presented against him at trial. That evidence included, inter alia, Burgos' purchase of a life insurance policy for himself and the decedent three weeks before her murder and Burgos' purchase of fire insurance that took effect one month before the incident. *See* N.T., 03/15-25/1993, at 1071, 1414, 1423. Evidence placed Burgos at the scene of the crime when the strangulation and fire first occurred. *Id.* at 205. The record further showed that Burgos stopped to get gas on his way home from work that night, and gasoline was the discovered accelerant

found on the victim's body and throughout the home. *Id.* at 1891. At trial, Burgos contended that he returned home to his house already on fire and was only able to save his children. *Id.* at 1487. He stated that he heard his wife screaming for help while the house was on fire—the same story he told police when they arrived on the night of the fire. *Id.* These statements, however, were directly contradicted by the autopsy report that decedent died by strangulation prior to the fire. *Id.* at 1283. Further, Burgos' children had no smoke or gasoline residue on them such that they could have been inside the burning home after the fire began. *Id.*

At trial, Burgos' defense was that the crime was committed by Joel Nordmeyer ("Nordmeyer"), a male Jehovah's Witness who taught bible study to the Burgos family, often at their residence. *See* N.T., 03/23/1993, at 1526-32. On the evening of the murder, Burgos called to inform Nordmeyer that he could not attend their usual Monday bible study, but Nordmeyer nonetheless briefly stopped at the Burgos residence. *Id.* at 1528. Nordmeyer testified that he played baseball with the Burgos children and then left the premises without teaching a lesson because he was uncomfortable engaging in bible study with a woman and without another male or another Jehovah's Witness present. *Id.* at 1528-30. Nordmeyer delivered grain on the evening of the murder and presented a delivery receipt corroborating his alibi. *Id.* at 1532, 1543. Nordmeyer's father, who resides with Nordmeyer, also testified

that his son was delivering grain on the evening of the murder, as part of their family farm's grain delivery policy to deliver grain at night. *Id.* at 1574-75.

Although we acknowledge some level of speculation is required as to the identity of the DNA sample, *see Hardy*, 2025 WL 1688799, at *30, Burgos makes no argument, and points to no evidence, to suggest that an unknown female he requests be identified was involved in the perpetration of the murder and arson. While Burgos is not required to identify a suspect for a petition for further DNA testing to be granted, *see Hardy*, 2025 WL 1688799, at **66-68, he fails to present a consistent or cohesive speculative argument that casts the requisite doubt on his conviction to counter the evidence presented against him. More pointedly, he fails entirely "to make a case-specific showing that there is a 'reasonable possibility' … that 'DNA testing of the specific evidence, assuming exculpatory results, would establish' [his] 'actual innocence' of the offense in question," i.e., "that the anticipated, newly discovered DNA evidence would make it more likely than not that no reasonable juror would have found the applicant guilty beyond a reasonable doubt." *See id.* at *30.

In light of the foregoing, we conclude that Burgos failed to establish a reasonable possibility that the DNA testing would produce results satisfying the actual innocence requirement to obtain post-conviction DNA testing under section 9543.1. Therefore, Burgos' first claim does not entitle him to relief.

**PCRA Petition**

- 18 -

Burgos further argues that the PCRA court improperly denied his separate PCRA petition filed on the same day as his motion seeking post-conviction DNA testing. Burgos' Brief at 13. To the extent that he requested further DNA testing in his PCRA petition, we have already ruled on that claim. To the extent he attempts to invoke the newly-discovered fact exception to the PCRA's time bar based upon the results of the DNA testing,[9] his argument is baseless, as again, he is not entitled to post-conviction DNA testing and there are no results that could be deemed a newly-discovered fact. *See* 42 Pa.C.S. § 9545(b)(1)(ii). The DNA itself certainly is not newly discovered, as the record clearly reflects that the report concerning the DNA was issued twenty years ago. *See id.* § 9545(b)(2) (any exception to the one-year time bar under the PCRA must be raised "within one year of the date the claim could have been presented"). This claim therefore fails.

Burgos additionally contends the trial court's failure to provide notice of its intent to dismiss his PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907 violated his due process rights. Burgos' Brief at 15. As

_____

[9] Burgos' PCRA petition is unquestionably untimely, as his judgment of sentence became final in 1996. *See* 42 Pa.C.S. § 9545(b)(1), (3) (to be timely, a PCRA petition must be filed within one year of the date the judgment of sentence becomes final, which occurs "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review"). Thus, for any court to have jurisdiction to decide any of the claims raised in the petition, Burgos would have to invoke one of the exceptions to the PCRA's time bar. *See id.* § 9545(b)(1)(i)-(iii).

stated above, however, Burgos' PCRA petition was patently untimely, and he failed to invoke a timeliness exception. Therefore, the PCRA court's failure to provide a Rule 907 notice does not entitle Burgos to relief. ***See Commonwealth v. Lawson***, 90 A.3d 1, 5 (Pa. Super. 2014) (noting that "where the PCRA petition is untimely, the failure to provide such notice is not reversible error").

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/28/2025